Kevin M. Shelby
1100 North  Priest Drive
Apt   2001
Chandler, Arizona 85226
Plaintiff *Pro se*



# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF AIRZONA

| | |
|---|---|
| Kevin M. Shelby,<br><br>    Plaintiff,<br>vs<br><br>Brookdale Senior Living, Inc.,<br>  an Arizona corporation,<br><br>    Defendant. | No. **CV20-00804-PHX-DLR**<br><br>**C O M P L A I N T**<br><br>**(Racial Discrimination and Retaliation – Title VII)**<br><br>**Jury Trial Requested** |

Plaintiff Kevin M. Shelby alleges as follows:

1)  Plaintiff Kevin M. Shelby is African American, and at all relevant times herein was a resident of Maricopa County, State of Arizona;

2)  Defendant Brookdale Senior Living, Inc. (Defendant) is a branch of a nation-wide corporation, one of six such branches in Maricopa County, Arizona, and whose primary business is caring for the aged and mentally impaired;

3)  Defendant, located at 2555 North Price Road, Chandler, AZ, employed Plaintiff Shelby at all relevant times herein;

4) After Jacinda Shite and Robert Herrera interviewed Shelby, Defendant hired him on June 4, 2009, to work in the kitchen in the position of Line Cook;

5) During Shelby's first five and a half years of employment, he performed his duties so well that Defendant increased his wages twice and promoted him to Sous Chef, reflective of his excellent job performance;

6) Everything changed for Shelby and his work environment upon Defendant's hiring Shauna Goldberg to fill the post of Director of Dining Services, on or about early April 2014;

7) Soon after Defendant Brookdale terminated the employment of Executive Chef Jacinda Skite, around the first week of August 2014, Shelby informed Goldberg of his desire to be considered to fill the post of Executive Chef;

8) Much to Shelby's surprise, Goldberg refused to interview him for the post of Executive Chef, claiming that Brookdale's policy prevented her from promoting "from within," despite her failure to produce any document to substantiate her claim;

9) On Sunday, June 7, 2014, near the independent-living dining room, Shelby overheard Goldberg inform Larry _____ "to hang in there, and give me some time and I will get you into the position of Executive Chef," because she "could not tolerate having someone like Kevin (Shelby) be the face of Brookdale," whose residents were 98% Caucasian;

10) Shelby reasonably understood Goldberg's words "...someone like Kevin..." to reflect her shame and discriminatory animus over his African-American race;

11) Shortly thereafter, Shelby called the 800 Integrity Line to complain that he perceived Goldberg to be discriminating against him because of his race. He ultimately called on two additional occasions to leave the same complaint;

12) Around the middle of June 2014, Goldberg hired Sam ____, an out-side applicant to fill the post of Executive Chef, whose skills were substantially lower that Shelby's;

13) Upon information and belief, Goldberg never verified Sam's resume claim that the White House previously had employed him as a cook;

14) Goldberg's spurious claim that Brookdale could not consider Shelby for the promotion to Executive Chef, coupled with her decision to hire Sam despite his inferior skills, left him emotionally crushed and eager to leave Brookdale;

15) After researching his suspicion of racial discrimination, Shelby concluded in early 2015 that Goldberg's actions were unlawful, thereby causing him to share his conclusion with Brookdale Executive Director Maria Parham;

16) Although Parham seemed to take seriously Shelby's complaint of racial discrimination, she took no corrective action;

17) Upon realizing that Executive Director Parham intended to take no action to address his complaints against Goldberg, Shelby interviewed with two other Chandler Brookdale facilities in the hope of leaving what he realized was a racially-hostile work environment;

18) Upon receiving Shelby's request to transfer away from Brookdale, Goldberg rejected his request, claiming that his departure would leave her "short-handed;"

19) Around this same time, Shelby's co-worker Jared Breezy informed him that Goldberg had told Breezy that she could not tolerate having "someone like (Kevin) be the face" of Brookdale;

20) Shelby reasonably interpreted Goldberg's words "someone like him…" to reflect her discriminatory animus against his African American race;

21) About six months after hiring Sam to fill the post as Executive Chef, Goldberg terminated his employment because of his substandard skills and poor leadership;

22) Upon learning of Sam's termination, Shelby again expressed his interest in being promoted to the post of Executive Chef;

23) Finally, in early February 2015, Defendant's Executive Director Maria Parham offered to promote Shelby from his position of Sous Chef to fill the post of

Executive Chef, with an increase of wages from about $32,000 to an annual salary of $42,000;

24) Shelby expressed his sincere appreciation for the offer, but explained to Executive Parham that in view of his substantial experience and skills, he felt that his skills and experience with Brookdale warranted an annual salary of at least $45,000;

25) Amazed at Shelby's polite but assertive behavior, Executive Director Parham explained that she would have to discuss the matter with the Brookdale's Department of Human Resources;

26) After several days of consideration, Executive Parham accepted Shelby's offer, thereby promoting him to the position of Executive Chef at an annual salary of $45,000;

27) Shortly thereafter, Director of Dining Services Shauna Goldberg expressed to Shelby that she was aghast at Brookdale's decision to compensate him with an annual salary of $45,000, explaining that she would have offered him "no more than $37,000," substantially less than the $42,000 that she had been paying Sam;

28) Goldberg's candor failed to surprise Shelby because he knew that she had already fabricated the claim that Brookdale "did not promote from within" to justify her failure to promote him to Executive Chef, coupled with her racial

animus in refusing to permit an African American Executive Chef to "be the face" of Brookdale to its Caucasian residents;

29) Therefore, on May 13, 2015, Shelby submitted a written complaint to Executive Director Parham, who again failed to take any action, despite the racially-demeaning and hostile environment Goldberg was creating, as articulated in Shelby's complaint, a copy of which is attached hereto as Exhibit A;

30) Angry at Shelby's racial-discrimination complaint against her, Goldberg launched a campaign to scour his employment record for any rationale to discipline him;

31) So eager was Goldberg to discipline Shelby, she finally had to reach back a year (to May 10 and September 23, 2014) in order to issue against him a Corrective Action on June 16, 2015 for skipping two lunch-breaks;

32) In Goldberg's effort to create a record for ridding Brookdale of Shelby, she failed to make any effort to determine whether the Corrective Action was warranted;

33) Therefore, upon receiving the Corrective Action, Shelby was forced explain to Goldberg that he previously had requested and obtained authorization to skip both of the lunches in order that he could be treated for back pain by Innovative Healthcare physical therapy, located next door to the kitchen area;

34) Goldberg responded with indifference to Shelby's explanation;

35) Around the middle of March 2014 and before Brookdale had hired Goldberg, Shelby had submitted a written request to take time off in May 2015 in order for him to attend his son's high school graduation in Georgia;

36) Human Resource Director Jackie Morris granted Shelby's request;

37) Later, several weeks after Brookdale had hired Goldberg, Shelby sought Goldberg's assurance that he still had the time off to attend his son's graduation;

38) Goldberg refused to acknowledge that Shelby still enjoyed his granted time-off;

39) Within two hours, at his desk in the office her shared with Goldberg, Shelby prepared and submitted to her a written request for time-off for the same reason of attending his son's high school graduation in Georgia;

40) Later that day, Goldberg rejected Shelby's request. Shortly thereafter, and to his astonishment, he found his request in the very trash can that he shared with Goldberg;

41) On the following day, Shelby prepared a written complaint about Goldberg's conduct, and submitted it to Human Resource Director Jackie Morris;

42) Upon considering Shelby's complaint, she immediately granted his request for time-off;

43) Despite Shelby's record of properly carrying out his duties as Executive Chef, Goldberg issued a second notice of Corrective Action on September 4, 2015,

complaining that among other performance failures, Shelby had carelessly failed to prepare a special birthday lunch on about August 27 for all the Brookdale residents whose birthdays fell within the month of August;

44) Shelby read this second Corrective Action in disbelief, because he had prepared the week before the special luncheon, consisting of steak, lobster, twice-baked potatoes and asparagus, which he and his crew flawlessly served to the residents on or about August 27, during Goldberg's presence;

45) At the meeting when Executive Director Parham presented the Corrective Action to Shelby, inexplicably in Goldberg's absence, he vigorously denied her claim by describing his efforts, and those of his crew, to prepare the birthday lunch. He also explained that later that day he, at Goldberg's request, had been working with Vanetta _____ in the assisted-living kitchen

46) Parham disagreed with Shelby's account, claiming that Goldberg had telephoned Vanetta, inquiring about Shelby's presence, only to hear her explain that he was not with her;

47) The following morning, upon Vanetta's hearing from Shelby about Goldberg's claim that Shelby had not been working with her, Vanetta informed him that Goldberg had never called to inquire about his whereabouts;

48) Ignoring the September 4 Corrective Action's instruction to "describe the incident in detail to include the following information:  date, time and place,"

and having written nothing more than the ambiguous phrase "employment concerns…", Goldberg concluded the notice with the generalized statement: "As a result of overall performance, your employment is terminated."

49) Defendant Goldberg's conduct of a) rejecting Shelby's superior skills and hiring Sam ___ to fill the post of Executive Chef, b) fabricating the purported policy that Brookdale never promoted from within; c) explaining to others that Brookdale could not tolerate having Shelby "be the face of Brookdale Senior Living; d) failing to address Shelby's concerns disclosed during his three calls to the 800 Integrity Line, e) groundlessly denying Shelby's three requests to transfer to another Brookdale; f) vetoing Shelby's previously approved time-off for his son's graduation; e) creating a hostile work environment (as described in his complaint of May 13, 2015) and g) plotting with Line Cook Larry ___ that if he would be patient, she intended to fire Shelby and hire Larry for the post of Executive Chef, cumulatively constitute a malicious disregard for Plaintiff Shelby's federally-protected rights, thereby reflecting an evil hand guided by an evil mind, and amply justifying a jury instruction for punitive damages;

50) Upon learning of Shelby's multiple complaints against Goldberg, Defendant failed to craft a remedy that was reasonably calculated to stop the racial discrimination and hostile environment;

## Demand for Jury Trial

The Plaintiff hereby demands a trial by jury, pursuant to FRCP Rule 38, United States Constitution Seventh Amendment, and 42 USD 1981a (a) and (c);

## Request for Expedient Trial Setting

This case is entitled to priority over other civil cases and an expedient trial setting pursuant to 42 USC 2000e-5(f) 5.

## Count One

## (Racial Discrimination and Hostile Work Environment)

51) Plaintiff Kevin Shelby hereby re-asserts all allegations set forth above;

52) Defendant Brookdale's conduct described above reflect that Plaintiff Shelby:  a)  is a member of a protected class; b)  was qualified to be promoted and retained in the post of Executive Chef;  c) that being rejected for the promotion to Executive Chef, receiving two retaliatory Corrective Actions, and being fired from his post as Executive Chef, all under false pretexts, collectively constitute adverse employment actions, and d)  Defendant's conduct amply create an inference of racial animus,  all four of which constitute a *prima facie* case for racial discrimination by creating a hostile work environment in violation of 42 USC Section 2000e-2(a)(1);

53) Not only was Brookdale's conduct objectively repugnant to any member of a protected class because of its humiliating nature and its interference with one's work performance, but Shelby subjectively found it so, as well;

54) Plaintiff Shelby suffered physically and emotionally as a direct result of Brookdale's misconduct and its indifference thereto because the conduct a) polluted his workplace, b) making it more difficult for him to do his job as Sous Chef and Executive Chef because of the abusive environment, c) undercutting both his pride in his work and d) destroying his desire to remain in his position at that Brookdale facility;

55) Plaintiff Shelby timely filed on September 14, 2015 his Charge of Discrimination with the United States Equal Employment Opportunity Commission (Exhibit B), and received thereafter his Notice of Suit Rights on February 4, 2020 (Exhibit C);

56) As a direct result of Defendant Brookdale's discriminatory conduct, Plaintiff Shelby has suffered, and continues to suffer, the severe emotional anguish, including clinical depression described above;

57) As a direct result of Defendant Brookdale's discriminatory actions, Plaintiff Shelby has suffered, and continues to suffer wage loss;

## Count Two

### (Retaliation – Title VII)

58) Plaintiff realleges all paragraphs above as if fully set forth herein;

59) As articulated above, by complaining to Executive Director Parham regarding Goldberg's campaign of racial animosity, Plaintiff Shelby a) acted to protect his Title VII rights, and b) Brookdale thereafter took multiple adverse employment actions against him, c) creating a causal link between his actions and Brookdale's response, which constitute a *prima facie* case of retaliation in violation of 42 USC Section 2000e-3(a).

**WHEREFORE,** Plaintiff Kevin M. Shelby prays for relief as follows:

A) Compensatory damages for wage loss and emotional anguish suffered by him;

B) Punitive damages in an amount sufficient to deter similar conduct in the future;

C) An award of court costs and attorney fees pursuant to 42 USC Section 1988, and

D) Such further relief as the Court deems proper in the premises.

DATED THIS 24th day of April 2020,

by _____
Kevin Shelby
Plaintiff *Pro se*

To whom it may concern-                                                    May 13th

I am writing this letter as on official compliant towards Shauna Goldberg and to reiterate the conversation between myself Kevin Shelby and head of HR Jackie. On May 12th, after being confronted by Shauna for the 5th time in 7 days being asked about my Food Handlers card, I once again stated that its not required to obtain one because I am Serv Safe Certified. Shauna stated "I don't care if you need it get it because I said so." I once again stated this is considered even higher than a food handler's card and I shouldn't have to get once because she said so as I also stated this is not violating any state laws or company polices. At that point she turned around and stated "fucking pathetic" and stormed out the kitchen. Within an hour I was pulled out of the kitchen and confronted by Jackie and was told if I did not obtain a food handlers card by the next day I would be suspended which led to me breaking down and telling Jackie the previous events that's taken place.

On May 12th I told Jackie on May7th Shauna entered the kitchen with a very aggressive tone asking me "why didn't I do what I was told to do last night" while slamming an ice bucket across the aisle. She stated "we all look like asses in front of Roger now." I didn't respond. I then told Jackie Shauna returned to the kitchen and she asked Ashley what happen the previous night. Considering Ashely was done for the day I asked Shauna if she wanted an explanation as to what really happen the previous night. Shauna then replied while banging her fist on the table and in a very loud aggressive tone stated I DON'T GIVE A SHIT, I DON'T GIVE A SHIT, I DON'T GIVE A SHIT in front of my entire staff. I later told Shauna that I did not appreciate the way she spoke to me and that it was uncalled for, inappropriate and unprofessional in which she replied: Oh well deal with it and that it should be lesson learned. Jackie then stated that if what I was saying is true then it would be dealt with because these actions were unacceptable. I then stated that it is true and there were witness that over heard her speaking to me this way and to ask Ashley so that I don't have to continue with Shauna's harassment. I told Jackie that at this point this is becoming a very hostile work environment and that her actions were beginning to cause me emotional and physical stress. I told Jackie I don't feel safe working with Shauna due to the threats of being fired, her telling me that she don't want me to have the job and how she feels about me being over paid. I also stated I was not comfortable about the comment made by Shauna that she can put whatever she wanted in my file as all she needs is a paper trail to get rid of me.

I told Jackie that I feel I was being singled out due to being African American as I had to abide by different rules and company polices then others. Examples: obtaining a food handlers card, having a baby and being told I need to provide a Dr's note to prove it and showing preferential treatment by undermining my authority when it comes to disciplining Caucasian employees for the same reasons I was being disciplined. I also have several other examples if need be. I stated that I told Shawna that the company policy is to get a Dr's not after 3 days and we have non-black employees who have missed more than 3 days and not even asked for one. I was told by Shauna that AZ is an at -will state and any employer has the right to ask any employee they want to ask. I then asked why am I the only one being asked and her answer was again she has that right as my employer.

I am asking that these complaints are looked into so that these actions by Shauna Goldberg towards me can stop so that I can continue to have the RIGHT to provide for my family and continue to have the RIGHT to continue to work for Brookdale Senior living my employer of the past 6 years.

Exhibit

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 540-2015-03313 |

| **Arizona Attorney General's Office, Civil Rights Division** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Kevin M. Shelby** | **(602) 872-3727** | **02-02-1975** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **7250 S. Kyrene Rd., Apt 335, Tempe, AZ 85283** | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **BROOKDALE SENIOR LIVING** | **500 or More** | **(480) 345-7171** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **2555 N Price Rd, Chandler, AZ 85224** | | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest          Latest
**09-04-2015**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began to work for my employer in June 2009, most recently as the Executive Chef, reporting to Shauna Goldberg, Director of Dining Services. In or about August 2014, I notified Goldberg of my intent to apply for promotion to Executive Chef; however, she declined to interview me and hired a lesser qualified individual. I discovered in January 2015 that her actions were unlawful and complained to Maria Parham, Executive Director, to no avail. I was promoted in March 2015 to Executive Chef. My employer is aware of my disability. In December 2014, I submitted a request for time off for my son's graduation in May 2015. Goldberg denied my request for time off, and then later denied having the paperwork. I found the document in her trash can and took it to HR. Jackie then authorized the time off. On or about May 13, 2015, I submitted a complaint of discrimination against Goldberg. On or about June 16th, she disciplined me for not taking a lunch break on May 20, 2014, and September 23, 2014. She also retroactively denied and disciplined me for medical absences related to my disability and ordered me to work while I had contagious bronchitis, disregarding my doctor's notes. On or about June 12, 2015, I overheard Goldberg tell Larry, a Line Cook, to hang in there and give her some time and she will get him my job. She further stated that

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Sep 14, 2015 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Date*       *Charging Party Signature* | |

Exhibit B

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA <br> ☒ EEOC | 540-2015-03313 |

| **Arizona Attorney General's Office, Civil Rights Division** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

someone like me should not be representing the company because potential residents might see me. At least 98% of our residents are White. When I confronted Goldberg, she told me to go home and not return without a doctor's note after ordering me to come to work knowing my medical condition. Goldberg disciplined and finally terminated me on or about September 4th for an August luncheon on a day when she assigned me to another kitchen, ignoring the fact that my staff took care of the lunch without any issues. I have complained of the discrimination to Corporate HR, Integrity Line, Parham, and the Regional Director to no avail.

**I believe I was discriminated against because of my race, Black/African American, in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe I was discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended, and retaliated under both for engaging in protected activity.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. <br> SIGNATURE OF COMPLAINANT |
| Sep 14, 2015 _____ *Charging Party Signature* <br> Date | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: Kevin M. Shelby
1100 N. Priest Dr
Apt 2001
Chandler, AZ 85226

From: Phoenix District Office
3300 North Central Ave
Suite 690
Phoenix, AZ 85012

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 540-2015-03313 | Jeremy A. Yubeta, Enforcement Supervisor | (602) 640-5028 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Elizabeth Cadle,
District Director

JAN 3 1 2020
(Date Mailed)

Enclosures(s)

cc: BROOKDALE SENIOR LIVING
Bahar Azhdari
111 Westwood Place
Brentwood, TN 37027



Exhibit C

INFORMATION RELATED TO FILING SUIT
UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS    --    **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS    --    **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION    --    **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*