**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Kevin M Shelby, | No. CV-20-00804-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Brookdale Senior Living Incorporated, | |
| Defendant. | |

Plaintiff Kevin Shelby was employed by Defendant Brookdale Employee Services, LLC's ("Brookdale") and worked in an affiliated Brookdale company's senior living community in Chandler, Arizona. He began working there in 2009 as a line cook and was promoted to executive chef in February 2015. (Doc. 1 ¶¶ 4, 23.) Mr. Shelby's employment was terminated in 2015. (*Id*. ¶ 48.) He notified the EEOC of his dismissal and obtained a right-to-sue letter. (*Id*. at 17.)

In this lawsuit, Mr. Shelby asserts two claims for relief under Title VII of the Civil Rights Act of 1964. Those claims include (1) racial discrimination and hostile work environment and (2) retaliation. (*Id.* ¶¶ 51–59.) Brookdale filed this motion to Dismiss and Compel Arbitration (the "Motion"). (Doc. 12.) The Motion contends that Mr. Shelby's claims are subject to a mandatory arbitration agreement that he signed as a new employee. Mr. Shelby opposes Brookdale's motion, arguing that the arbitration agreement lacks mutual assent or that it is unenforceable. (Doc. 14.) The Court held oral argument and now grants Brookdale's Motion.

## I.     STANDARD OF REVIEW

The parties agree that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, applies to this dispute. "In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration . . . ." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Federal courts must vigorously enforce arbitration agreements. *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 739 (9th Cir. 2014). "A motion to compel arbitration is decided according to the standard used by district courts in resolving summary judgment motions pursuant to Rule 56, Fed. R. Civ. P." *Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 939 (D. Ariz. 2011).

## II.    DISCUSSION

Brookdale, the movant, "has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). The parties dispute that a valid arbitration agreement exists. Assuming that it is valid and enforceable, the parties agree that the scope of the arbitration agreement applies to Title VII claims. Additionally, in Title VII cases such as this, the Ninth Circuit requires that the movant to show that the plaintiff has waived the right to a jury trial "knowingly." *Id*. at 1323–24.

### A.     The Existence of a Valid, Written Arbitration Agreement

#### 1.     Mutual Assent

Arizona law applies to whether a valid arbitration agreement exists. *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1058–59 (9th Cir. 2020) ("State law governs the validity, revocability, and enforceability of a contract."). "An enforceable arbitration agreement must . . . contain all the elements of a contract, to wit: offer, acceptance, and consideration." *Cooper v. Youngtown Health Inc.*, No. 1 CA-CV 19-0854, 2020 WL 7024347, at *2 (Ariz. App. Nov. 24, 2020). Brookdale points to several documented examples in which Mr. Shelby agreed to arbitrate disputes with the company, rather than litigate them. First, the employment application that he signed in May 2009 includes the

following arbitration provision:

> I understand that by signing this application, I agree that in the event a dispute should arise with regard to whether or not I am hired, or if hired, a dispute should arise between my employer and me, that I agree to arbitrate the dispute by a final binding arbitration.

(Doc. 12-1 at 11.) Mr. Shelby initialed his acknowledgement next to this provision. He signed at bottom of the page below the words, "**DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE APPLICANT STATEMENT.**" (*Id.*)

Next, after he was offered the job as a line cook, in July 2009, Mr. Shelby signed a document titled "**Employment Binding Arbitration Agreement**" (the "Agreement"). (*Id.* at 13.) The Agreement begins by explaining what it calls the "Binding Arbitration Procedure."

> Under the Procedure, certain disputes that may arise from your employment with us, or the termination of your employment with us, must . . . be submitted for resolution by mandatory binding arbitration. . . .
>
> After we sign this Agreement, we both will be precluded from bringing or raising in court or another forum any dispute that was or could have been brought or raised under the procedures set forth in this Agreement.

(*Id.*)

Finally, in both July 2009 and March 2015, Mr. Shelby acknowledged receiving the Brookdale Associate Handbook. (Doc. 12-1 at 18, 19.) Both times, Mr. Shelby signed an "Associate Handbook Receipt and Acknowledgement" that includes the following statement: "I understand that Brookdale has an Employment Binding Arbitration policy in place should any disputes arise between Brookdale and me, and that I agree to arbitrate the dispute by a final binding arbitration." (*Id.*)

Mr. Shelby, in opposing the Motion, argues that the Agreement is unenforceable because it lacks mutual assent. *See WB, The Bldg. Co., LLC v. El Destino, LP*, 227 Ariz.

302, 308 (App. 2011) (observing that Arizona common law breach-of-contract defenses apply to arbitration agreements, including lack of mutual assent and unconscionability). As for his mutual assent argument, Mr. Shelby first contends that his employer, Brookdale Employee Services, LLC, was not a signatory to the Agreement and therefore cannot enforce it.[1] (Doc. 14 at 4–5.) Mr. Shelby also argues that the Agreement's signature line for Brookdale does not identify who signed the document on the company's behalf. It simply says "Company Representative" without identifying which company is a party to the Agreement.

The Court agrees with Brookdale on this issue. The Agreement states, at the top of the document, that it is a "Binding Arbitration Agreement for Associates of Brookdale affiliated communities." (Doc. 12-1 at 13.) Along with that, Paragraph 1 of the Agreement states that arbitration is "a condition of your employment here," i.e., at Brookdale's Chandler campus. (Emphasis added.) Paragraph 1(a) further clarifies that the Agreement applies to any claims "made against us, any of our parent, subsidiary, or affiliated entities." (*Id.* at 14.) While Mr. Shelby questions whether the Agreement was signed by someone employed by his employer, he does not dispute that his employer is affiliated with Brookdale. In fact, his employer, Brookdale Employee Services, LLC, supplied him and other personnel to the entity that operated the Chandler community. (*Id.* ¶¶ 2, 4.) The document makes clear that, as a condition of his employment at Brookdale, Mr. Shelby agreed to submit his employment-related claims to arbitration.

Mr. Shelby's other mutual-assent related arguments can be analyzed and resolved summarily. (*See* Doc. 14 at 5–7.) His argument that the arbitration provision in his employment application "expired on its own terms" fails because Brookdale is now moving to enforce a different arbitration agreement – the one that he signed after he was hired. His objection to the employee handbook acknowledgement is unpersuasive because that statement simply references the previously signed Arbitration Agreement. Finally, Mr.

---

[1] Brookdale Employee Services, LLC is an entity that employs personnel for work in Brookdale senior living communities. Brookdale no longer operates the Chandler community. (Doc. 12-1 ¶ 4.)

Shelby's argument that the Arbitration Agreement's exclusion of injunctive relief misconstrues the language and purpose of that provision. Mr. Shelby is not seeking injunctive relief, however, if he does, under the Agreement, the "arbitrator shall have the power to award all remedies that could be awarded by a court . . . [under] Title VII." (Doc. 12-1 ¶ 1(g).) This includes injunctive relief. And as Brookdale persuasively argues, this injunctive relief exclusion permits Brookdale the option of seeking a court order if an employee or former employee tries to steal company trade secrets. (*Id*. ¶ 1(b)(v) (identifying "claims for unfair competition and the use or unauthorized disclosure of trade secrets or confidential information" as excluded from mandatory arbitration).)

## 2.    Procedural Unconscionability

Mr. Shelby also challenges the Agreement under the doctrines of procedural and substantive unconscionability. *See Longnecker v. Am. Exp. Co.*, 23 F. Supp. 3d 1099, 1108 (D. Ariz. 2014). The party asserting unconscionability bears the burden and it is "a high bar to meet in demonstrating that an arbitration agreement is unconscionable." *Id.* (quoting *Effio v. FedEx Ground Package*, No. cv-08-1522-PHX-ROS, 2009 WL 775408, *3 (D. Ariz. Mar. 20, 2009)). "In Arizona, unconscionability includes both procedural unconscionability, *i.e.*, something is wrong with the bargaining process, such as, oppression or surprise, or substantive unconscionability, *i.e.*, the contract terms per se are overly harsh or generate one-sided results." *Id.*

Mr. Shelby contends that the Agreement is procedurally unconscionable because it was presented to him on a "take-it-or-leave-it" basis as a condition of his employment. He also states that the Agreement was part of a package of "12 different significant policy documents" that Brookdale required him "to sign on the same day." (Doc. 14 at 9.) This Court's *Longnecker* decision, applying Arizona law, rejected the "take-it-or-leave-it" argument. 23 F. Supp. 3d at 1108–09. There, the plaintiffs "argue[d] that because they were required to agree to the Arbitration Policy as a condition of employment and because they had no ability to negotiate the terms of the agreements, the arbitration agreements were contracts of adhesion." *Id.* at 1108. The Court held that this argument alone did not satisfy

the plaintiffs' high burden. Simply because one of the contracting parties held a "weaker" negotiating position does not lead to unconscionability. Instead, "the agreement may be enforceable if it is consistent with [the parties'] reasonable expectations and not unduly oppressive." *Id.* at 1109 (quoting *EEOC v. Cheesecake Factory, Inc.*, No. CV 08-1207-PHX-NVW, 2009 WL 1259359, at *3 (D. Ariz. May 6, 2009)). Even if the arbitration agreement amounts to an adhesion contract, the Court observed that "[t]here is [no] Arizona law supporting the assertion that a finding of adhesion equates to a finding of procedural unconscionability." *Id.* (quoting *R&L Ltd. Invs., Inc. v. Cabot Inv. Props., LLC*, 729 F. Supp. 2d 1110, 1115 (D. Ariz. 2010)).

Using the Arizona courts' focus on reasonable expectations: "those factors bearing upon . . . the real and voluntary meeting of the minds of the contracting party: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, [and] whether alterations in the printed terms were possible," *R&L Ltd. Investments, Inc.*, 729 F. Supp. 2d at 1115, Mr. Shelby has failed to satisfy his burden to show that the Arbitration Agreement is procedurally unconscionable. His declaration makes the point that "[n]obody suggested that I read the documents first before signing them, or explained that I might be waiving legal rights by signing them." (Doc. 14-2 ¶ 10.) He also states that "[a]s a new employee on my first day on the job, I believed it might have appeared insubordinate or argumentative if I had demanded to read everything first before I signed the documents." (*Id.* ¶ 9.) But there is no evidence that Mr. Shelby asked the company's representative to explain what the documents mean or even if he could take some time to consult with a friend, family member, or attorney before signing them.

On the other hand, the Arbitration Agreement is conspicuously labeled, at the top of the document and in bold letters, "**Employment Binding Arbitration Agreement**." It then describes, in detail and in an outline format, that employment disputes are subject to "a mandatory binding arbitration procedure," meaning disputes "must be submitted for final and binding resolution by a private and impartial arbitrator, to be jointly selected by

you and us." (Doc. 12-1 at 13.) Additionally, to that point, on the last page and above the signature line, the Agreement states, "[w]e both understand that by agreeing to the terms in this Procedure, both of us are giving up any constitutional or statutory right we may possess to have covered claims decided in a court of law before a judge or a jury." (*Id.* at 16.) The Agreement identifies the types of disputes subject to arbitration and those claims that are not. It also generally describes the procedure for the arbitration proceedings and allocating costs. This document clearly states that, by accepting his employment with Brookdale, Mr. Shelby agrees to submit his employment-related claims to binding arbitration and waive his rights to a civil trial.

The Court thus finds that the Agreement is not procedurally unconscionable.[2]

### 3.      Substantive Unconscionability

"[S]ubstantive unconscionability addresses the fairness of the terms of the contract itself. A contract may be substantively unconscionable when the terms of the contract are so one-sided as to be overly oppressive or unduly harsh on one of the parties." *Clark v. Renaissance W., LLC*, 232 Ariz. 510, 512 (App. 2013) (citations omitted). Mr. Shelby makes five boilerplate arguments in support of his substantive unconscionability claim. Each fails to carry his burden that the Agreement, as a whole or in any part, is "overly oppressive or unduly harsh." Accordingly, for the following reasons, his objections based on substantive unconscionability are rejected.

First, Mr. Shelby claims that the confidentiality provision in the Agreement renders it unconscionable. (Doc. 14 at 10.) The mere fact that an arbitration agreement contains a confidentiality provision does not make it per se unconscionable. Indeed, as Brookdale points out, prior cases within this District have upheld confidentiality provisions. *E.g.*, *Monsanto v. DWW Partners, LLLP*, No. CV-09-01788-PHX-FJM, 2010 U.S. Dist. LEXIS 8604, *8–9 (D. Ariz. Jan. 15, 2010) (rejecting substantive unconscionability challenge to a

---

[2] Mr. Shelby's argument that the Agreement is unconscionable because it references the American Arbitration Association rules without providing a copy or direct access to those rules is not a basis for finding procedural unconscionability. This argument has been soundly rejected in previous cases. *E.g.*, *Russ v. United Servs. Auto Ass'n*, No. CV-16-02787-PHX-PGR, 2017 WL 1953458 (D. Ariz. May 11, 2017).

"basic confidentiality provision [that] is neither overly broad nor unfairly onesided"). Here the confidentiality provision states, "that the [arbitration] Procedure shall be conducted on a confidential basis." (Doc. 12-1 ¶ 1(d).) This appears to be a standard confidentiality agreement and it applies equally to both parties. Still, Ms. Shelby does not explain how the confidentiality provision is substantively unconscionable in its operation. This argument is, therefore, rejected.

Next, Mr. Shelby argues that the Arbitration Agreement is substantively unconscionable because it "seems to impose" an "additional" mediation requirement. (Doc. 14 at 11.) This seemingly derives from a combination of Paragraph 1(a), the "Claims Covered" provision,[3] and Paragraph 1(c), the "Internal Efforts" clause.[4] Mr. Shelby does not provide any more detail explaining why a mediation requirement is substantively unconscionable. In any event, the Court disagrees with the principle behind Mr. Shelby's argument. Even if there is a mediation requirement in the Arbitration Agreement, the Court observes that the requirement appears to be an acknowledgement that some claims can be resolved through an informal negotiation process before they proceed to arbitration. This does not necessarily require that the parties hire and pay for a mediator. On the contrary, this provision contemplates an informal exchange of settlement terms between Brookdale and Mr. Shelby, potentially even before the parties engage a third-party neutral. One can appreciate why informal dispute resolution is ideal. When effective, it saves the parties time and money.

Third, Mr. Shelby argues that the Agreement imposes unfair limitations as much as it "has any limitations or waivers with respect to the types of claims that could be brought or the relief (damages, injunctive relief, attorney's fees or costs) that could be obtained in a judicial forum." (Doc. 14 at 11.) This argument misses the mark. The Agreement does not preclude an arbitrator from entering injunctive relief. The inclusion of injunctive relief

---

[3] "Claims Covered: This agreement to submit to mediation and (if necessary) arbitration . . . ."
[4] "As a prerequisite for submitting an employment dispute to mediation and, if necessary, arbitration, both you and we agree to make good faith efforts at resolving any dispute internally on an informal basis through our management channels appropriate to that particular dispute."

in the "Claims Not Covered" section applies to claims such as "unfair competition and the use or unauthorized disclosure of trade secrets or confidential information." (Doc 12-1 ¶ 1(b)(v).) Contrary to Mr. Shelby's position, the Agreement authorizes the arbitrator to "award all remedies that could be awarded by a court or administrative agency in accordance with the governing and applicable substantive law, including, without limitation, Title VII." (*Id.* ¶ 1(g).)

Fourth, Mr. Shelby argues that the fees and costs associated with arbitration are excessive and may deny him of his rights to have his claims adjudicated. (Doc. 14 at 11–12.) He points to Paragraph 1(j) of the Agreement, which states that Brookdale will "initially" cover the arbitration costs except that, upon completion of the proceedings, the arbitrator may require a different assignment of costs. Mr. Shelby points out that his complaint was filed *pro per* and that he was granted *in forma pauperis* status based on his personal financial situation. (Docs. 2, 6.) He explains that the potential prospect of having to pay all the arbitration costs "is a daunting thought" and chills his ability to move forward with his claims. (Doc. 14 at 12.) In its reply brief, Brookdale persuasively argues that mere speculation about potential arbitration costs does not render an arbitration agreement unconscionable. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000); *Clark*, 232 Ariz. at 513. Brookdale also points out, persuasively, that this arbitration agreement requires that it at first pay for the costs of arbitration. After the proceedings conclude, and depending on the outcome, the arbitrator may apply applicable law to apportion costs. (Doc. 12-1 ¶ 1(j).) Mr. Shelby's opposition brief does not make the particularized showing of financial hardship required to render the Agreement unconscionable. This is especially true under the circumstances where Brookdale must pay, upfront, all the arbitration costs.

Mr. Shelby finally argues that the limited discovery available in arbitration renders the agreement substantively unconscionable. (Doc. 14 at 12.) This argument fails, too. Under the Agreement, "[t]he arbitrator shall have the authority to allow for appropriate discovery and exchange of information before a hearing, including (but not limited to)

production of documents, information requests, depositions, and subpoenas." (Doc. 12-1 ¶ 1(d).) Mr. Shelby all but ignores this provision, which authorizes him to engage in traditional discovery methods. He does not even generally explain how the discovery process in arbitration, rather than discovery in this forum, would prejudice him in this case. *See Penn v. Fidel*, No. CV-11-339-PHX-DGC, 2011 WL 1559224, *2 (D. Ariz. Apr. 25, 2011) (rejecting a discovery-based unconscionability argument because "[p]laintiff does not explain how he is prejudiced by the agreement's discovery provision, particularly given that an express purpose of the agreement is to provide a 'fast, cost-effective dispute resolution mechanism.'").

For these reasons, the Court rejects Mr. Shelby's substantive unconscionability objections and holds that the Agreement is enforceable.

**B.    Knowing Waiver of Jury Trial Right**

The Ninth Circuit has held that, in Title VII cases, the Court should determine whether the plaintiff "has knowingly agreed to submit such disputes to arbitration." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (quoting *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1305 (9th Cir. 1994)). Neither party squarely raised this issue in the briefing. Because of the Ninth Circuit's pronouncement in *Ashbey*, the Court will address it here.[5]

The Court finds that Mr. Shelby did execute the Agreement knowing that he was waiving his right to a jury trial in any potential Title VII dispute. The Agreement here is a separate document that Mr. Shelby signed during his employment intake process. It is a four-page document that is conspicuously titled "**Employment Binding Arbitration Agreement**." In an easy-to-read outline format, the document explains the concept of arbitration, which possible claims are covered including Title VII claims, which claims are not covered, how an arbitration works, how discovery will proceed, and how to allocate costs. Additionally, right above the signature line, the Agreement states, "[w]e both

---

[5] Mr. Shelby cited *Ashbey* in his opposition brief, but he did not develop the argument beyond merely identifying the case's holding. (Doc. 14 at 3.) At the Court's request, the parties addressed this issue at oral argument.

understand that by agreeing to the terms in this Procedure, *both of us are <u>giving up</u> any constitutional or statutory right we may possess to have covered claims <u>decided in a court of law before a judge or a jury</u>.*" (Doc. 12-1 at 16 (emphasis added).)

### C.   Attorneys' Fees and Non-Taxable Expenses

Brookdale requests an award of attorneys' fees and non-taxable expenses in connection with this Motion. (Doc. 12 at 11.) The Court, in its discretion, denies this request.

## III.   CONCLUSION

The Agreement is a valid and enforceable agreement between the parties. Mr. Shelby's Title VII claims are covered claims subject to arbitration. By signing the Agreement, Mr. Shelby knowingly waived his right to a jury trial for his Title VII claims. Accordingly,

**IT IS ORDERED:**

1.    Defendant's Motion to Dismiss and Compel Arbitration is granted. (Doc. 12.) The parties are directed to proceed in accordance with the terms of the Employment Binding Arbitration Agreement.

2.    Plaintiff's Complaint is dismissed. (Doc. 1.)

3.    Defendant's request for an award of attorneys' fees and non-taxable expenses is denied.

4.    Defendant's alternative Motion to Stay is denied as moot. (Doc. 12.)

5.    The Clerk of Court shall enter judgment in favor of Defendant and close this case.

Dated this 24th day of February, 2021.

Michael T. Liburdi
United States District Judge